UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| INPAENG PHADY,<br><br>                   Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>                   Respondent. | 4:16-CV-04144-KES<br><br>REPORT & RECOMMENDATION |

**INTRODUCTION**

    Movant, Inpaeng Phady, has filed a *pro se* motion for sentence reduction pursuant to 28 U.S.C. § 2255.[1]  See Civ. Docket No. 1.  Respondent the United States of America ("government"), has filed a motion to dismiss Ms. Phady's motion without holding an evidentiary hearing.  See Civ. Docket No. 6.  Ms. Phady did not respond to the government's motion, though that motion has been pending for nearly three months.  This matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge.  The following is this court's recommended disposition of Ms. Phady's motion.

---

[1] This opinion refers to documents filed in Ms. Phady's civil § 2255 motion ("Civ."), as well as documents filed in her underlying criminal action, United States v. Phady, 4:14-cr-40103-KES-3 ("CR").

**FACTS**

Ms. Phady was indicted in this court on September 9, 2014, along with three co-defendants. See CR Docket No. 1. She was charged with conspiracy to distribute 100 kilograms or more of marijuana and with conspiracy to commit money laundering. Id. A superseding indictment was issued on December 2, 2014, adding a forfeiture allegation. See CR Docket No. 39.

Ms. Phady entered into a plea agreement with the government whereby she agreed to plead guilty to conspiracy to commit money laundering in return for the government's dismissal of the drug conspiracy charge. See CR Docket No. 81.[2] She entered her plea of guilty on February 9, 2016. See CR Docket No. 82.

Prior to her sentencing, a presentence investigation report (PSR) was prepared. See CR Docket No. 111, PSR for Inpaeng Phady. In the PSR, Ms. Phady received no adjustment for having a minor or minimal role in the criminal activity under the United States Sentencing Guidelines ("USSG") § 3B1.2. See CR Docket No. 111, PSR p. 12, ¶ 47. Sentencing took place on May 9, 2016. See CR Docket No. 123. The district court sentenced Ms. Phady to 37 months' imprisonment. See CR Docket No. 128.

Ms. Phady did not pursue a direct appeal of her sentence or conviction. On October 6, 2016, Ms. Phady filed the instant § 2255 motion. See Civ. Docket No. 1. In that motion, Ms. Phady asserts that she is entitled to the

---

[2] Docket 81 is the amended plea agreement. The original plea agreement can be found at CR Docket No. 70.

"retroactive" application of Amendment 794 to the USSG.³  Id.  Ms. Phady asserts she was entitled to a reduction in her base offense level as calculated under the USSG because she played a minor role in the criminal activity.  Id.

The government now moves to dismiss Ms. Phady's § 2255 motion without holding an evidentiary hearing.  See Civ. Docket No. 6.  The government argues (1) Ms. Phady's claim is procedurally defaulted, (2) Ms. Phady has not stated a claim under § 2255, and (3) she cannot claim application of Amendment 794.  See Civ. Docket No. 7.  As indicated above, Ms. Phady did not respond to the government's motion.

## DISCUSSION

**A.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case were often in a distant location.  United States v. Hayman, 342

---

³ This court has received several motions identical to Ms. Phady's motion.  Her § 2255 motion appears to be a photocopied, fill-in-the-blank document that is circulating among prisoners.  The language characterizing Ms. Phady's argument that Amendment 794 should be "retroactively" applied to her is inapposite.  That is because Amendment 794 was passed and in effect at the time of Ms. Phady's sentencing.  Thus, there is no reason for this court to address whether Amendment 794 should be given retroactive effect in Ms. Phady's case.

U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.  Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255.  Relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural

default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.    Amendment 794**

It is helpful before analyzing Ms. Phady's claim to understand what Amendment 794 is and how it fits into the sentencing scheme of the USSG.  Amendment 794 went into effect on November 1, 2015, approximately six months before Ms. Phady was sentenced.  It amended the commentary to USSG § 3B1.2, dealing with decreases in a defendant's base offense level.  Section 3B1.2 directs courts to subtract four points from the base offense level if the defendant was a "minimal" participant in the criminal activity, to subtract three points if the defendant's level of participation was between

"minimal" and "minor," and to subtract two points if the defendant was a "minor" participant. See USSG § 3B1.2. The commentary to § 3B1.2 provides that the mitigating role adjustment is available to any defendant whose level of participation made him or her less culpable than the average participant in the criminal activity. Id. cmt. 3(A).

Amendment 794 did not change the text of § 3B1.2, but instead amended only the application notes to the section by introducing a non-exhaustive list of factors for the district court to consider when determining whether to apply § 3B1.2. United States v. Gomez-Valle, 828 F.3d 324, 327 (5th Cir. 2016). The amendment was intended to clarify § 3B1.2; it was not a substantive change. Id.

Previously, application note 3(C) to § 3B1.2 read as follows:

> The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

See USSG § 3B1.2, cmt. 3(C) (2014).

The current application note 3(C) to § 3B1.2 contains the same introductory sentence, with the following additional material:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i)   The degree to which the defendant understood the scope and structure of the criminal activity;
> (ii)  The degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

6

    (iv)    The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
    (v)    The degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

See § 3B1.2, cmt. 3(C) (2015).

Ms. Phady asserts in her § 2255 petition that Amendment 794 entitles her to a reduction in her USSG base offense level because she was a minor participant. See Civ. Docket No. 1. Generally, a sentencing court is required to use the version of the USSGs which are in effect at the time of sentencing. Dorsey v. United States, 132 S. Ct. 2321 (2012); USSG § 1B1.11(a). Ms. Phady was sentenced on May 9, 2016. Amendment 794 went into effect on November 1, 2015. Therefore, the Amendment was extant before Ms. Phady's sentencing. If it is applicable, there is no need for the court to determine its retroactivity.

## C.    Ms. Phady's Claim is Procedurally Defaulted

As explained above, a claim other than a claim of ineffective assistance of counsel must be raised on direct appeal or it is procedurally defaulted. Frady, 456 U.S. at 167-68; McNeal, 249 F.3d at 749. When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on

7

direct appeal, the claim can only proceed after the petitioner has shown either actual innocence or that the procedural default should be excused because there was both cause for the default and prejudice to the petitioner. McNeal, 249 F.3d at 749.

Ms. Phady did not pursue a direct appeal at all. Her claim that the district court should have given her the benefit of a reduction in her USSG calculation for having a "minor" role as clarified by Amendment 794 could have been raised in a direct appeal, had she taken one. Her failure to appeal and to raise the "minor" role issue means that she has procedurally defaulted this claim.

Therefore, Ms. Phady must show both cause for why she failed to raise this issue on direct appeal as well as actual prejudice. Because Ms. Phady did not respond in any way to the government's motion to dismiss, and cause and prejudice are not addressed in her § 2255 motion, she has not shown cause and prejudice. For this reason, the court recommends dismissal of Ms. Phady's § 2255 motion with prejudice. Armstrong v. Iowa, 418 F.3d 924, 926-27 (8th Cir. 2005) (dismissal with prejudice is appropriate where the ground for dismissal is procedural default).

**D.    Ms. Phady's Claim is Not Cognizable Under § 2255**

In any case, a § 2255 motion is not the proper vehicle to ask the district court to apply the Amendment 794. Section 2255, as discussed above, is only available for relief where "the sentence was imposed in violation of the Constitution or laws of the United States," "the court was without jurisdiction

to impose such sentence," or for errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." See 28 U.S.C. § 2255; Hill, 368 U.S. at 428; Peguero, 526 U.S. at 27-30.  Here, failure to apply Amendment 794 did not render Ms. Phady's sentence unconstitutional, in violation of a federal law, nor did it deprive the court of jurisdiction.  Failure to apply the amendment also cannot be said to be a fundamental defect resulting in a complete miscarriage of justice.

Arguably, the amendment worked no change at all.  Gomez-Valle, 828 F.3d at 327 (Amendment 794 is not substantive, but only clarifying).  Prior to the amendment, courts were instructed to look at the totality of circumstances in determining the applicability of USSG § 3B1.2.  After the amendment, the instruction to sentencing courts is the same—look at the totality of circumstances—but the Sentencing Commission now sets forth a list of examples to consider.  The list of examples is necessarily "non-exhaustive" because the test continues to be "totality" of the circumstances—that is, all relevant facts.  No list of examples could possibly include all the circumstances that might be relevant in all cases coming before federal district courts.

Many courts which have addressed this issue concluded that an argument that Amendment 794 should apply to one's case does not state a cognizable claim under § 2255.  This court has found no decision from any court holding to the contrary.  See United States v. Bazaldua, 2016 WL 5858634 at **1-2 (D. Minn. Oct. 5, 2016) (claim that Amendment 794 should

be applied does not state a claim under § 2255); Kelly v. United States, 2016 WL 5660761 at ** 1-2 (S.D. Ga. Sept. 28, 2016) (claim that Amendment 794 should apply did not render Kelly's sentence fundamentally unfair or a miscarriage of justice sufficient to provide relief under § 2255 because Amendment 794 did not work a substantive change); Altman v. United States, 2016 WL 5219599 at * 2 (N.D. Iowa Sept. 21, 2016) (argument that Amendment 794 should be applied to one's sentence calculation under the USSG does not state a claim under § 2255); and United States v. Valencia, 2016 WL 4491848 at * 2 (E.D. Wa. Aug. 25, 2016) (claim that Amendment 794 should apply is not cognizable under § 2255).

Ms. Phady relies upon United States v. Quintero-Leyva, 823 F.3d 519 (9th Cir. 2016).  In that case, Norberto Quintero-Leyva pleaded guilty to importing methamphetamine and was sentenced approximately one year prior to the issuance of Amendment 794.  Id. at 521.  At the time Amendment 794 became effective, Quintero-Leyva's case was pending on direct appeal before the Ninth Circuit.  Id.  At his sentencing, Quintero-Leyva had not received any reduction in his base offense level under the USSG for playing a minor role in the criminal activity pursuant to USSG § 3B1.2.  Id.  The court held Amendment 794 would apply retroactively to cases on direct appeal, but advanced no opinion whether it would apply to cases once an appellate decision had been issued.  Id. at n.1.  The Ninth Circuit's holding in Quintero-Leyva is inapposite to Ms. Phady's case—she appears before the court on collateral review, not on direct appeal.  This court has found no case from any

court applying Amendment 794 to cases on collateral review.  Furthermore, unlike the defendant in Quintero-Leyva, Amendment 794 was enacted *prior to* Ms. Phady's sentencing—the district court could have applied it had the court found facts which called for its application.  Amendment 794 does not supply grounds for granting Ms. Phady's § 2255 motion.

Even assuming one could state a claim for relief under § 2255 by arguing that Amendment 794 should apply to one's case, such a claim would only be cognizable where the facts are such that failure to apply the amendment resulted in a complete miscarriage of justice.  The court imagines such a case might be stated where the facts were overwhelming and entirely one-sided.  Such is not the situation in Ms. Phady's case.

Ms. Phady pleaded guilty to conspiracy to commit money laundering.  The money laundering was conducted to hide the proceeds of illegal narcotics distribution.  See CR Docket No. 71 at p. 1 (Statement of Factual Basis).  A co-conspirator told investigators it was Ms. Phady who controlled the money.  See CR Docket No. 111, PSR at p. 7, ¶ 21.  Ms. Phady and another co-defendant were responsible for laundering $1.3 million just through casinos.  Id. at p. 11, ¶ 39.  The total amount of funds which were estimated to have been laundered in the conspiracy was between $550,000 and $1.5 million.  Id. at pp. 11-12, ¶ 44.  In addition to the money laundered through casinos, Ms. Phady admitted to also laundering drug money through the purchase of luxury purses and wallets, purchasing a luxury motor vehicle, and structuring cash deposits to avoid reporting requirements.  See CR Docket No. 71 at pp. 1-2, ¶¶ 1, 3 & 4.

These admissions raise the possibility that Ms. Phady was responsible for laundering far in excess of the $1.3 million that passed through casinos alone.

The facts show Ms. Phady was heavily involved in the money laundering conspiracy.  An adjustment in one's USSG base offense level for being a minor or minimal participant in the criminal activity is available *only* to a defendant who was "substantially less culpable than the average participant in the criminal activity."  See USSG § 3B1.2, cmt. 3(A).  Here, the evidence clearly shows Ms. Phady was at least as culpable as her codefendants (if not more culpable) in the money laundering conspiracy to which she pleaded guilty.  No miscarriage of justice occurred when § 3B1.2 and its accompanying Amendment 794 was not applied to the calculation of Ms. Phady's sentencing range under the USSG.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Civ. Docket No. 6] be granted and that movant Inpaeng Phady's motion pursuant to § 2255 be dismissed with prejudice without holding an evidentiary hearing.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely

12

and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED January 26, 2017.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge